UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA GENERAL ENERGY
COMPANY, L.L.C.

Case No. ___1:20-cv-351___

Plaintiff,

vs.

GRANT TOWNSHIP OF INDIANA
COUNTY AND THE GRANT TOWNSHIP
BOARD OF SUPERVISORS,

*ELECTRONICALLY FILED*

Defendant.

## COMPLAINT

Plaintiff Pennsylvania General Energy Company, L.L.C. ("PGE"), by and through its undersigned counsel, files the following Complaint against Defendant Grant Township, Indiana County, Pennsylvania ("Grant Township"), and the Grant Township Supervisors to invalidate and enjoin enforcement of the Grant Township Home Rule Charter regarding the depositing of waste from oil and gas extraction, and in support thereof states as follows:

## INTRODUCTION

1.   Grant Township is a home rule municipality organized under the Home Rule Charter and Optional Plans Law, 53 Pa. C.S. § 2901 *et seq.* The residents of the municipality elected on November 3, 2015, to jettison its status as a Second Class Township under the Pennsylvania Second Class Township Code, 53 P.S. § 65101 *et seq.*, to pursue an agenda of entitlement to a

claimed sovereign right of local community self-government.[1] What is believed to be a true and correct copy of the Home Rule Charter ("HRC") is attached as Exhibit A and is incorporated herein.

2.      In June 2014, the Second Class Township adopted a Community Bill of Rights Ordinance ("CBORO") that, among other things, prohibited corporations from depositing waste from oil and gas extraction in the township to prevent PGE from operating an injection well there. What is believed to be a true and correct copy of the CBORO is attached as Exhibit B and is incorporated herein.

3.      After PGE challenged the CBORO in this Court, U.S. District Judge Susan Paradise Baxter[2] ruled on October 14, 2015, that numerous provisions of the CBORO were invalid, pre-empted, and unlawfully exclusionary under state law.

4.      The month after Judge Baxter's decision was entered, the residents of the township elected to become a Home Rule municipality with a governing HRC that contained the same provisions that were invalidated by Judge Baxter.

5.      On March 31, 2017, Judge Baxter ruled that multiple provisions of the CBORO violated the United States Constitution.

6.      Despite the rulings of Judge Baxter, Grant Township has continued to claim that its HRC is valid and enforceable.

7.      The HRC is unconstitutional and unlawful. Courts have routinely invalidated similar governmental overreaches across the country.

---

[1] The prior municipality is hereinafter referred to as the "Second Class Township" to distinguish the legal status of the municipality before the adoption of its Home Rule Charter.
[2] At the time of the ruling, Judge Baxter was a United States Magistrate Judge conducting the proceedings pursuant to the provisions of 28 U.S.C. Section 636(c)(1) with the consent of the parties.

8.    The HRC prevents PGE from operating or selling its injection well and exposes PGE to criminal penalties, civil actions, loss of property rights, and liability.

9.    The HRC causes real and concrete harm to PGE by depriving PGE of its rights as guaranteed by the United States Constitution.

10.   PGE is entitled to declaratory relief that the HRC is void and unenforceable, a preliminary and permanent injunction prohibiting enforcement of the HRC, and costs and expenses, including attorneys' fees.

## PARTIES

10.   PGE is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business at 120 Market Street, Warren, Pennsylvania 16365. PGE is, and at all times relevant herein was, authorized to do business in the Commonwealth of Pennsylvania. At all relevant times herein, PGE was in the business of exploration and development of natural gas.

11.   Grant Township is a home rule municipality located in Indiana County, Pennsylvania, with a business address of 100 East Run Road, Marion Center, Pennsylvania 15759.

12.   The Grant Township Board of Supervisors ("Supervisors," collectively with the Township, "Defendants") is the governing body of the Township. This action does not name any Grant Township supervisors in their individual capacity.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

14.   PGE also seeks equitable relief and a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3

15. Venue is proper in this Court because the events and omissions giving rise to PGE's claims occurred and are occurring in the Western District of Pennsylvania.

16. Venue is also proper in this Court because Grant Township is located within the Western District of Pennsylvania.

## BACKGROUND

17. PGE's exploration and development activities include drilling and operating natural gas wells and managing, *inter alia,* brine and produced fluids generated from operating wells.

18. In 1997, Pennsylvania General Energy Corp., PGE's predecessor in interest, put into production a deep gas well in Grant Township on property known as the Yanity Farm pursuant to Well Permit No. 37-063-31807-00-00 issued by the Pennsylvania Department of Environmental Protection (the "Yanity Well").

19. On September 21, 2012, PGE entered into an injection lease with Michael H. Yanity, Marian E. Yanity, John G. Yanity, and Karen D. Yanity ("Lessors"), covering 150 acres of land, more or less, and being known as Tax Map Nos. 19-11-102, 19-11-102.2, and 19-11-102.3 for the purpose of, *inter alia,* injecting and disposing of tophole water, production brine, and stimulation flowback fluids associated with oil and natural gas exploration and production into the Huntersville and Oriskany formations ("Injection Lease").

20. The Injection Lease requires PGE to pay the Lessors $5,000 initial consideration, $10,000 additional first-year consideration, annual rental of $10,000, annual surface use rental of $4,000, and royalty of $.10 per barrel (42 US gallons) on injection fluids injected into the premises. The Injection Lease requires the payments to be adjusted annually based on the U.S. Bureau of Labor and Statistics unadjusted percent changes in the Consumer Price Index.

21.   From September 2012 until October 2020, PGE paid $145,869.20 to the Lessors for the items set forth in Paragraph 20 hereinabove.

22.   The Injection Lease is in force for so long as PGE makes the payments prescribed therein.

23.   The United States Environmental Protection Agency ("EPA") issues Underground Injection Control ("UIC") program Class II-D permits under the federal Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.,* to authorize the injection of brine and produced fluids for disposal. Pennsylvania currently does not have primacy to administer the UIC program and issue UIC permits.

24.   On May 2, 2013, PGE submitted an application to EPA for a UIC permit to convert the Yanity Well into a Class II-D brine injection well and to inject produced fluids generated at other PGE oil and gas wells into the Yanity Well.

25.   EPA issued the UIC permit to PGE on March 19, 2014. On August 21, 2014, the United States Environmental Appeals Board issued an order denying review of petitions for appeal of the permit, and on September 11, 2014, EPA issued a final UIC permit to PGE.

26.   Pennsylvania also regulates injection wells and ancillary facilities under the authority of the Pennsylvania Oil and Gas Act, 58 Pa.C.S. § 2301 *et seq*., and other Pennsylvania environmental statutes.

27.   On April 16, 2014, PGE applied to the Pennsylvania Department of Environmental Protection ("DEP") to reclassify the Yanity Well from a production well to an injection well.

28.   On June 3, 2014, the Second Class Township adopted the CBORO, a local law entitled as an ordinance "[e]stablishing a Community Bill of Rights for the people of Grant Township, Indiana County, Pennsylvania, which prohibits activities and projects that would violate the Bill of Rights, and which provides for enforcement of the Bill of Rights."

29.  In Section 2, which was entitled "Statements of Law – A Community Bill of Rights," the CBORO outlined a manifesto declaring the Second Class Township's sovereign right to self-government, right to prohibit activities relating to fossil fuel extraction and production, and the existence of ecosystem rights. *See* Exhibit B at § 2.

30.  The CBORO expressly prohibited within the Township any corporation or government from "engag[ing] in the depositing of waste from oil and gas extraction" and invalidated any "permit, license, privilege, charter, or other authority issued by any state or federal entity which would violate [this prohibition] or any rights secured by [the CBORO], the Pennsylvania Constitution, the United States Constitution, or other laws".  *See* Exhibit B at § 3(a), (b).

31. The CBORO defined "[c]orporations" as "any corporation, limited partnership, limited liability partnership, business trust, public benefit corporation, business entity, or limited liability company organized under the laws of any state of the United States or under the laws of any country."  *See* Exhibit B at § 1(a).

32.  PGE is a "corporation" as the term was defined in the CBORO. *See* Exhibit B at § 1(a)

33.   "Depositing of waste from oil and gas extraction", as defined by the CBORO, included, without limitation, the following:

> [T]he depositing, disposal, storage, beneficial use, treatment, recycling, injection, or introduction of materials including, but not limited to, brine, "produced water," "fract [sic] water," tailings, flowback or any other waste or by-product of oil and gas extraction, by any means. The phrase shall also include the issuance of, or application for, any permit that would purport to allow these activities.

*See* Exhibit B at § 1(b).

34.  The CBORO provided that corporations that violated or sought to violate the CBORO "shall not be deemed to be 'persons,' nor possess any other legal rights, privileges, powers, or protections which would interfere with the rights or prohibitions enumerated by this Ordinance. 'Rights, privileges, powers, or protections' shall include the power to assert state or federal

preemptive laws in an attempt to overturn this Ordinance, and the power to assert that the people of the municipality lack the authority to adopt this Ordinance." *See* Exhibit B at § 5(a).

35.   The CBORO granted all residents of the Township the right to "enforce the rights and prohibitions secured by [the CBORO]" and the right "to intervene in any legal action involving rights and prohibitions of [the CBORO]." *See* Exhibit B at § 2(f).

36.   The CBORO stated that "[a]ny corporation or government that violates any provision of [the CBORO] shall be guilty of an offense and, upon conviction thereof, *shall* be sentenced to pay the maximum fine allowable under State law for that violation. Each day or portion thereof, and violation of each section of [the CBORO], shall count as a separate violation." *See* Exhibit B at § 4(a).  (Emphasis added).

37.   The CBORO provided that "Grant Township, or any resident of the Township, may enforce the rights and prohibitions of [the CBORO] through an action brought in any court possessing jurisdiction over activities occurring within the Township, in such an action, the Township or the resident shall be entitled to recover all costs of litigation, expert and attorney's fees." *See* Exhibit B at § 4(b).

38.   The CBORO further provided that "[a]ny action brought by either a resident of Grant Township or by the Township to enforce or defend the natural rights of ecosystems or natural communities secured by [the CBORO] shall bring that action in the name of the ecosystem or natural communities secured by [the CBORO] in a court possessing jurisdiction over activities occurring within the Township.  Damages shall be measured by the cost of restoring the ecosystem or natural community to its state before the injury, and shall be paid to the Township to be used exclusively for the full and complete restoration of the ecosystem or natural community." *See* Exhibit B at § 4(c).

39.  On August 8, 2014, PGE filed a complaint in the U.S. District Court for the Western District of Pennsylvania challenging the constitutionality, validity, and enforceability of the CBORO and seeking injunctive relief, declaratory judgment, and compensatory damages.

40.  On October 22, 2014, DEP issued a permit that authorized a change in the status of the Yanity Well that allowed PGE to use the Yanity Well as an injection well ("DEP Permit").

41.  Starting on October 22, 2014, PGE had all permits required to begin using the Yanity Well to inject produced fluids from PGE's other oil and gas development operations.

42.  On March 12, 2015, the DEP revoked the modification permit so that the DEP could perform what it called "additional required review of the application under applicable law."

43.  On March 30, 2015, PGE filed a second application with the DEP to reclassify the Yanity Well from a production well to an injection well.

44.  In August 2015, aware of the federal court action, the DEP suspended review of PGE's permit application pending the outcome of the challenge to the CBORO.

45.  On October 14, 2015, U.S. District Judge Susan Paradise Baxter granted PGE's motion for judgment on the pleadings, declaring that the Pennsylvania Limited Liability Companies Act and the Second Class Township Code preempted the provisions of the CBORO identified in ¶¶ 30, 34, 37, and 38 above and declaring that the CBORO was unlawfully exclusionary under state law. The Court enjoined the Township from enforcing those sections.  See *Pennsylvania General Energy v. Grant Township*, 139 F. Supp. 3d 706 (W.D. Pa. 2015).

46.  Eighteen days after Judge Baxter issued her original opinion and order on October 14, 2015, invalidating critical provisions of the CBORO, the Supervisors repealed the CBORO and moved those unlawful and enjoined provisions to the HRC in an obvious, and admitted, attempt to evade that order and get the matter on the ballot before the upcoming November election day.

47.  Grant Township adopted the HRC on November 3, 2015, as certified by the Indiana County Commissioners on November 16, 2015. See Exhibit B.

48.  The HRC incorporated substantially the same Bill of Rights contained in Section 2 of the CBORO, including the following provisions:

    a.  **Section 103**. The people of Grant Township possess the right to use their local government to make law, and the making and enforcement of law by the people through a municipal corporation, or any other institution, shall not eliminate, limit, or reduce their sovereign right of local community self-government.

    b.  **Section 104**. All residents of Grant Township, along with natural communities and ecosystems within the Township, possess the right to clean air, water, and soil, which shall include the right to be free from activities which may pose potential risks to clean air, water, and soil within the Township, including the depositing of waste from oil and gas extraction.

    c.  **Section 105.** All residents of Grant Township possess the right to the scenic, historic, and aesthetic values of the Township, including unspoiled vistas and a rural quality of life. That right shall include the right of the residents of the Township to be free from activities which threaten scenic, historic, and aesthetic values, including from the depositing of waste from oil and gas extraction.

    d.  **Section 106**. Natural communities and ecosystems within Grant Township, including, but not limited to, rivers, streams, and aquifers, possess the right to exist, flourish, and naturally evolve.

    e.  **Section 107**. All residents of Grant Township possess the right to a sustainable energy future, which includes, but is not limited to, the development, production, and use of

9

energy from renewable and sustainable fuel sources, the right to establish local sustainable energy policies to further secure this right, and the right to be free from energy extraction, production, and use that may adversely impact the rights of human communities, natural communities, or ecosystems. The right to a sustainable energy future shall include the right to be free from activities related to fossil fuel extraction and production, including the depositing of waste from oil and gas extraction.

49.   Sections 301 and 302 of the HRC are virtually identical to the invalidated CBORO §§ 3(a) and (b), expressly prohibiting within Grant Township any corporation or government from "engag[ing] in the depositing of waste from oil and gas extraction" and invalidating any "permit, license, privilege, charter, or other authorization issued to a corporation, by any State or federal entity, that would violate the prohibitions of this Charter or any rights secured by this Charter…" *See* Exhibit A at §§ 301, 302.

50.   The HRC defines "[c]orporations" as "any corporation, or business entity, organized under the laws of any State or country." *See* Exhibit A at Art. VIII.

51.   PGE is a "corporation" as the term is defined in the HRC.

52.   The HRC definition of "Depositing of waste from oil and gas extraction" is identical to the CBORO definition in Section 1(b), with the exception of a correction in spelling. *See* Exhibit A at Article VIII.

53.   Section 401 of the HRC is substantively identical to the invalidated CBORO § 5(a), providing that corporations that violate or seek to violate the HRC "shall not be deemed to be 'persons' to the extent that such treatment would interfere with the rights or prohibitions enumerated by this Charter or those laws, nor shall they possess any other legal rights, powers, privileges, immunities, or duties that would interfere with the rights or prohibitions enumerated by

this Charter or those laws, including standing to challenge the Charter or laws, the power to assert State or federal preemptive laws in an attempt to overturn the Charter or laws, or the power to assert that the people of Grant Township lack the authority to adopt this Charter or other Township laws." *See* Exhibit A at § 401.

54. Section 109 of the HRC, providing residents of Grant Township with the right to enforce the HRC, is substantially identical to CBORO § 2(f). *See* Exhibit A at § 109.

55. Section 303 of the HRC, establishing a criminal offense and penalties, is identical to CBORO § 4(a), with the exception of the substitution of the word "Charter" for "Ordinance." *See* Exhibit A at § 303.

56. Section 304 of the HRC, establishing a right of action in Grant Township and its residents and for recovery of attorneys' fees, is identical to the invalidated CBORO § 4(b), with the exception of the substitution of the word "Charter" for "Ordinance." *See* Exhibit A at § 304.

57. Section 305 of the HRC, providing for standing for ecosystems and "natural communities" and for damages, is substantially identical to the invalidated CBORO § 4(c). *See* Exhibit A at § 305.

58. On March 17, 2017, the DEP issued a second permit that authorized a change in the status of the Yanity Well that allowed PGE to use the Yanity Well as an injection well.

59. After PGE appealed certain conditions in the permit, the DEP issued an amended permit on April 3, 2018. ("DEP Permit II")

60. On March 31, 2017, Judge Baxter entered summary judgment in favor of PGE on its challenges to the CBORO based on the Equal Protection Clause, the First Amendment Petition Clause, and the Substantive Due Process Clause of the Fourteenth Amendment.  Accordingly,

Judge Baxter invalidated the provisions identified in ¶¶ 30, 34, and 37 above as well as others and enjoined the Township from enforcing those provisions

61. On March 19, 2020, the Department, citing to the HRC, rescinded DEP Permit II.

62. PGE has attempted to sell the Yanity Well for disposal of produced fluids from gas development operations but has been unable to do so based on the existence of the HRC.

63. As a direct and proximate cause of Grant Township's adoption of the HRC, PGE has been precluded from operating the Yanity Well for legally permissible injection purposes. Most recently, in November 2020, Grant Township relied on the HRC in part to order PGE to stop hauling oil and gas well drilling equipment on Township roadways despite the existence of a valid highway permit to do so.

64. As a direct and proximate cause of Grant Township's adoption of the HRC, PGE has been and will continue to be precluded from selling the Yanity Well for legally permissible injection purposes.

65. PGE has suffered and will continue to suffer injury and damages if the HRC is deemed valid and enforceable.

## COUNT I
### 42 U.S.C. § 1983 - Equal Protection Clause Violation

66. PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. PGE is a "person" within the meaning of the Fourteenth Amendment and is entitled to the protections afforded thereunder, including that of equal protection of the laws.

68.  The purpose of the Equal Protection Clause is to protect every person within a state's jurisdiction against arbitrary discrimination occasioned by the express terms of a statute or by its improper execution through duly constituted agents.

69.  The Equal Protection Clause requires that the laws of the state treat persons in the same manner as others similarly situated.

70.  Grant Township is required to act in conformance with the Fourteenth Amendment to the United States Constitution.

71.  The HRC, without rational relationship to any legitimate governmental interest, treats corporations and governments seeking to dispose of waste from oil and gas extractions in Grant Township differently than similarly situated natural persons, in that the HRC only applies to corporations, such as PGE, and governments, and not natural persons. *See, e.g.*, Exhibit A at § 301.

72.  Consequently, the HRC violates the Equal Protection Clause of the United States Constitution by treating corporations and governments differently than similarly situated natural persons.

73.  The United States Supreme Court has found that an equal protection claim can be successfully brought by a "class of one" where the claimant asserts being singled out for disparate treatment by a municipality.

74.  The HRC was initiated and enacted by Grant Township in direct response to the EPA's issuance of a UIC permit and the DEP's issuance of a change in use permit to PGE for the operation of a UIC well in Grant Township and in direct response to and in defiance of Judge Baxter's invalidation of multiple provisions of the CBORO.

75. Accordingly, the HRC violates the Equal Protection Clause of the United States Constitution and must be enjoined from application and enforcement.

**COUNT II**

**42 U.S.C. § 1983 – First and Fourteenth Amendments Violation**

76. PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

77. The First Amendment of the United States Constitution provides that no law shall abridge "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.

78. The Fourteenth Amendment of the United States Constitution provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1.

79. The HRC purports to divest corporations, such as PGE, of their constitutional right to petition the Government for a redress of grievances in that it strips corporations of: (1) their status as "persons" under the law; (2) their right to assert state or federal preemptive laws in an attempt to overturn the HRC; (3) and their power to assert that Grant Township lacks the authority to adopt the HRC. Exhibit A at § 401.

80. The HRC provides no process or procedure through which PGE and similarly situated persons could challenge the provision that purports to render invalid applicable local, state, and federal permits or the deprivation of its liberty interests.

81. Thus, the HRC is aimed at suppressing PGE's right to make a complaint to, or seek the assistance of, the government for the redress of grievances related to the HRC.

82. Accordingly, the HRC violates the First and Fourteenth Amendments of the United States Constitution and must be enjoined from application and enforcement.

## COUNT III

### 42 U.S.C. § 1983 - Substantive Due Process Violation

83.  PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

84.  The doctrine of Substantive Due Process under the Fifth and Fourteenth Amendments of the United States Constitution prohibits, among other things, the government from abrogating a person's constitutional rights.  U.S. Const. amend. V and amend. XIV, § 1.

85.  In enacting the HRC, Grant Township intended by virtue of all of its provisions to deny corporations, such as PGE, their legal and long-standing Constitutional rights, including, but not limited to, their rights under the Equal Protection Clause, the Contract Clause, the First Amendment, the Fifth Amendment, and the Fourteenth Amendment of the United States Constitution.

86.  Grant Township's conduct in abrogating PGE's interest in environmental and UIC permits at the Yanity Well is deliberate, arbitrary, and irrational, exceeds the limits of governmental authority, amounts to an abuse of official power, and shocks the conscience.

87.  Accordingly, in enacting the HRC, Grant Township has denied PGE substantive due process under the Fifth and Fourteenth Amendments of the United States Constitution and must be enjoined from application and enforcement.

## COUNT IV

### 42 U.S.C. § 1983 - Procedural Due Process Violation

88.  PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

89.   The Due Process Clause of the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V, amend. XIV, § 1.

90.   The prohibition of underground injection of produced fluid within Grant Township as a direct result of the enactment of the HRC significantly and materially devalues PGE's legal rights and interests related to and/or held within Grant Township, including PGE's Injection Lease and UIC permit.

91.   The prohibition of underground injection of produced fluid within Grant Township as a direct result of the enactment of the HRC significantly and materially devalues PGE's legal rights and interests in that it caused the loss of DEP Permit II allowing PGE to operate the Yanity Well.

92.   The HRC provides for no process or procedure that could be utilized by PGE to challenge the provision of the HRC that purports to render invalid any permit that allows underground injection of produced fluid to be conducted within Grant Township and devalues any legal interests related thereto.

93.   The fact that the HRC purports to prohibit corporations, such as PGE, from petitioning the government for the redress of grievances makes clear that the HRC provides for no process or procedure which PGE could avail itself to address the deprivation of its legal rights and interests caused by the HRC.

94.   Therefore, the HRC deprives PGE of legal rights and interests protected by the Fifth and Fourteenth Amendments of the United States Constitution without providing due process of law and must be enjoined from application and enforcement.

**COUNT V**

**42 U.S.C. § 1983 - Procedural Due Process Violation**

95.    PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

96.   The Fifth Amendment prohibits the enforcement of criminal laws so vague that they fail to give ordinary people fair notice of the conduct they seek to punish, or so lacking in standards that they invite arbitrary enforcement.

97.   Section 303 of the HRC creates a strict liability criminal offense: "[a]ny corporation or government that violates any provision of this Charter shall be guilty of an offense and, upon conviction thereof, shall be sentenced to pay the maximum fine allowable under State law for that violation. Each day or portion thereof, and each violation of a section of this Charter, shall count as a separate violation."

98.   Section 110 of the HRC provides that, "All rights secured by this Charter are inherent, fundamental, and unalienable, and shall be self-executing and enforceable against both private and public actors." This section further creates a right in Grant Township, the residents of Grant Township, and ecosystems and natural communities to enforce the HRC's provisions.

99.   Section 102 of the HRC is unconstitutionally vague in that it does not specify what conduct would interfere with the purported right of the residents of Grant Township to "possess both the collective and individual right of self-government in their local community, the right to a system of government that embodies that right, and the right to a system of government that protects and secures their human, civil, and collective rights."

100.  Section 104 of the HRC is unconstitutionally vague in that it does not specify what conduct would violate the right of Grant Township residents and "natural communities and

ecosystems within the Township" "to be free from activities which may pose potential risks to clean air, water, and soil within the Township…"

101. Section 105 of the HRC is unconstitutionally vague in that it does not specify what conduct would violate the right of Grant Township residents to "the scenic, historic, and aesthetic values of the Township, including unspoiled vistas and a rural quality of life...[including] the right of the residents of the Township to be free from activities which threaten scenic, historic, and aesthetic values."

102. Section 106 of the HRC is unconstitutionally vague in that it does not specify what conduct would interfere with the purported right of natural communities and ecosystems within Grant Township to "exist, flourish, and naturally evolve."

103. The HRC is unconstitutionally vague in that it directs criminal sanctions not only at corporations that violate the law, but also to those that "seek to violate" the HRC, and does not specify what conduct would constitute such an offense. *See* Exhibit A at § 401.

104. The HRC is unconstitutionally vague in that it does not provide ordinary people fair notice of the quantum of criminal sanction they may face for violating the law.

105. Because there are no standards differentiating between criminal and non-criminal behavior, the HRC invites unconstitutional arbitrary enforcement.

106. Accordingly, the HRC is an unconstitutionally vague criminal law that must be enjoined from application and enforcement.

## COUNT VI

### 42 U.S.C. § 1983 - Contract Clause Violation

107. PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

108. The Contract Clause of the United States Constitution provides that no state shall "pass any . . . Law impairing the Obligation of Contract . . ." U.S. Const. Art. I, § 10, Cl. 1.

109. The HRC bans PGE and any other corporation from engaging in the injection of waste from oil and gas extractions within Grant Township. *See* Exhibit A at § 301.

110. As set forth hereinabove, the Department rescinded DEP Permit II because of the existence of the HRC, which prevents the use of the Yanity Well under the Yanity Lease.

111. PGE has paid $145,869.20 to the Lessors for payments required by the Injection Lease and continues to incur costs as set forth hereinabove but has been unable to reap the benefits of its contract because of the existence of the HRC.

112. As set forth hereinabove, PGE has been unable to use or to sell the Yanity Well for disposal of produced fluids from gas development operations because of the existence of the HRC.

113. The continued existence of the HRC prevents PGE from realizing the benefits of the Injection Lease at great cost to PGE.

114. Accordingly, the HRC violates the Contracts Clause of the United States Constitution and must be enjoined from application and enforcement.

## COUNT VII

### Impermissible Exercise of Power under Home Rule Charter and Optional Plans Law

115. PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

116. A home rule municipality's powers and limitations are derived from the Home Rule Charter and Optional Plans Law, 53 Pa. C.S. § 2901 *et seq.* and Article IX of the Pennsylvania Constitution.

117. Section 2961 of the Home Rule Charter and Optional Plans Law, 53 Pa. C.S. § 2961, provides that "[a] municipality which has adopted a home rule charter may exercise any powers and perform any function *not denied by the Constitution of Pennsylvania, by statute or by its home rule charter.*" 53 Pa. C.S. § 2961 (emphasis added).

118. Moreover, Section 2962, which addresses the limitation on municipal powers, provides that [a] municipality *shall not* . . . [e]xercise powers *contrary to* or in limitation or enlargement of powers granted by statutes which are applicable in every part of this Commonwealth. 53 Pa. C.S. § 2962 (emphasis added).

119. Section 306 of the HRC provides that all laws adopted by the State legislature shall be the law of Grant Township *only to the extent that they do not violate the rights or prohibitions of the Charter*. *See* Exhibit A at § 306 (emphasis added).

120. Section 306 of the HRC violates the Pennsylvania Constitution. Article IX, Section 2 of the Pennsylvania Constitution grants municipalities the right to adopt a home rule charter and limits the powers that can be exercised by a home rule charter. In this regard, "[a] municipality which has a home rule charter may exercise any power or perform any function *not denied by this Constitution*, by its home rule charter *or by the General Assembly at any time.*" Pa. Const. art. IX, § 2 (emphasis added). Therefore, a home rule municipality must exercise its powers in a manner that is consistent with the Pennsylvania Constitution and state law, not in a manner that directly contravenes that law. Section 306 of the HRC purports to make the HRC itself and local law superior to the Pennsylvania Constitution and state law.

121.   Article I, Section 11  of the Pennsylvania Constitution provides that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law. . . ."  Pa. Const. art. I, § 11.

122.   Article I, Section 26 of the Pennsylvania Constitution provides that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."  Pa. Const. art. I, § 26.

123.   In direct contravention of the constitutional guarantees set forth in Sections 11 and 26, the HRC strips corporations of their status as "persons" under the law and prohibits corporations from challenging the HRC or Grant Township's laws in a court of law.  *See* Exhibit A at § 401.

124. Further, as set forth below, the HRC also contravenes Pennsylvania statutes regulating how oil and natural gas is developed and the status of corporations as "natural persons" in the eyes of the law.

125. The Home Rule Charter and Optional Plans Law expressly limits home rule municipalities from exercising powers contrary to or in limitation of constitutional and statutory rights and powers.

126. Accordingly, the HRC is an impermissible exercise of Grant Township's powers as a home rule municipality under the Home Rule Charter and Optional Plans Law and under Article IX of the Pennsylvania Constitution and is, therefore, invalid and unenforceable and must be enjoined from application and enforcement.

## COUNT VIII
## Preemption by the Pennsylvania Oil and Gas Act

127.   PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

21

128.   By prohibiting within Grant Township the injection and storage of Oil and Gas Materials, Grant Township is impermissibly regulating the development of oil and natural gas, which is exclusively and comprehensively regulated within the Commonwealth by DEP pursuant to the Pennsylvania Oil and Gas Act, 58 Pa.C.S. § 2301 *et seq*. (the "Oil and Gas Act").

129.   Section 3302 of the Oil and Gas Act, 58 Pa.C.S. § 3302, provides, in pertinent part, as follows:

> Except with respect to local ordinances adopted pursuant to the MPC and the act of October 4, 1978 (P.L. 851, No. 166), known as the Flood Plain Management Act, all local ordinances purporting to regulate oil and gas operations regulated by Chapter 32 (relating to development) are hereby superseded. No local ordinance adopted pursuant to the MPC or the Flood Plain Management Act shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas operations regulated by Chapter 32 or that accomplish the same purposes as set forth in Chapter 32.

130.   By its terms, Section 3302 preempts local ordinances that attempt to regulate oil and gas development except for ordinances adopted pursuant to the Pennsylvania Municipalities Planning Code (the "MPC") or the Flood Plain Management Act (the "FPMA").

131.   Even ordinances adopted pursuant to the MPC or the FPMA have significant limitations.  An ordinance adopted pursuant to the MPC or the FPMA is preempted if: (1) the ordinance "contain[s] provisions . . . that accomplish the same purposes as set forth in" the Oil and Gas Act; or (2) the ordinance "contain[s] provisions which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by the [Oil and Gas Act]."  58 Pa.C.S. § 3302.

132.   By its terms, the HRC was not adopted pursuant to the MPC or the FPMA.

133.   Moreover, one purpose of the HRC is virtually the same as the purpose set forth in the Oil and Gas Act and the HRC imposes conditions, requirements, and limitations on the same features of oil and gas operations regulated by the Oil and Gas Act.

22

134.    One purpose of the HRC is to regulate underground injection and storage of Oil and Gas Materials to address the health, safety, and welfare of Grant Township residents.  The Oil and Gas Act's purpose is to permit the optimal development of oil and natural gas while protecting the health, safety, and welfare of Pennsylvanians and the environment.  *See* 58 Pa.C.S. § 3202(1).

135.    The HRC imposes conditions, requirements, and limitations on the injection and storage of Oil and Gas Materials within Grant Township.  The Oil and Gas Act directly regulates wells drilled or altered to provide for such injection.

136.    Consequently, the HRC is preempted by the Oil and Gas Act and, therefore, is invalid and unenforceable and must be enjoined from application and enforcement.

**COUNT IX**
**<u>The HRC is Exclusionary</u>**

137.    PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

138.    Section 2962 of the Home Rule Charter and Optional Plans Law provides: "With respect to the following subjects, the home rule charter shall not give any power or authority to the municipality contrary to or in limitation or enlargement of powers granted by statutes which are applicable to a class or classes of municipalities: . . . Municipal planning under the act of July 31, 1968 (P.L. 805, No. 247), known as the Pennsylvania Municipalities Planning Code."  53 Pa. C.S. § 2962

139.    It is a well settled principle of Pennsylvania land use law that a municipality must authorize all legitimate uses somewhere within its boundaries.

140.    Section 603(i) of the MPC, 53 P.S. § 10603(i), provides that "zoning ordinances shall provide for the reasonable development of minerals in each municipality."

141.   The HRC's outright ban on the injection and storage of Oil and Gas Materials within Grant Township excludes legally permitted uses within Grant Township.

142.   Therefore, the HRC is invalid and unenforceable as exclusionary and must be enjoined from application and enforcement.

## COUNT X

**Preemption by the Pennsylvania Limited Liability Company Law**

143.   PGE hereby incorporates the factual allegations in Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

144.   The Pennsylvania Limited Liability Company Law, 15 Pa.C.S. § 8901 *et seq.*, (the "LLCL") provides that limited liability companies "have the legal capacity of natural persons to act."  15 Pa.C.S. § 8921.

145.   In enacting the LLCL, the Commonwealth of Pennsylvania intended to, and in fact did, preempt municipal regulation of a limited liability company's status as a natural person.

146.   The HRC purports to strip corporations including limited liability companies, such as PGE, of their status as natural persons and declares that corporations do not possess any other legal rights, privileges, power, or protections.  *See* Exhibit A at § 401.

147.   The HRC has been preempted by the LLCL, and is therefore invalid and unenforceable and must be enjoined from application and enforcement.

## COUNT XI

**28 U.S.C. §§ 2201 and 2202 - Declaratory Judgment**
**Unconstitutional and Unenforceable Ordinance**

148.  PGE hereby incorporates the factual allegations in Paragraphs 1 through 65, 67 through 75 (Count I), 77 through 82 (Count II), 84 through 87 (Count III), 89-94 (Count IV), 96 through 106 (Count V) and 108 through 114 (Count VI) of this Complaint as if fully set forth herein.

149. As set forth above, the HRC: (1) violates PGE's constitutional rights under the Equal Protection Clause, the First, Fifth, and Fourteenth Amendments, and the Contract Clause of the United States Constitution; (2) deprives PGE of substantive and procedural due process as preserved by the United States Constitution; (3) is an impermissible exercise of power under the Pennsylvania Home Rule Charter and Optional Plans Law; (4) is preempted by the Pennsylvania Oil and Gas Act and the Pennsylvania Limited Liability Company Law; and (5) is impermissibly exclusionary.

150. An actual controversy exists between PGE and Grant Township and the Grant Township Supervisors with respect to whether the HRC is constitutional and enforceable.

151. Grant Township and the Grant Township Supervisors assert that the HRC is constitutional, while PGE maintains that the HRC infringes on its constitutional rights as set forth above.

152. The HRC has created uncertainty regarding PGE's rights with respect to underground injection in Grant Township in which it has a legal interest.

153. As set forth above, Grant Township is causing PGE irreparable harm by violating PGE's constitutional rights.

154. Declaratory relief from this Court will terminate the dispute and controversy between PGE and Grant Township and the Grant Township Supervisors with respect to the constitutionality and validity of the HRC.

155. Declaratory judgment is necessary here because PGE has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to its rights.

156. A judicial declaration is necessary as to whether the HRC: (1) violates the Equal Protection Clause, the First, Fifth, and Fourteenth Amendments, and the Contracts Clause of the

United States Constitution; and (2) deprives PGE of substantive and procedural due process as preserved by the United States Constitution.

157. PGE is entitled to a declaratory judgment stating that the HRC is void an unenforceable in its entirety and to specific declarations that:

    a.  The HRC is void and unenforceable because it violates the Equal Protection Clause, the First Amendment, the Fifth Amendment, the Fourteenth Amendment, and the Contracts Clause of the United States Constitution;

    b.  The HRC is void and unenforceable because it violates procedural and substantive due process rights afforded under the Fifth and Fourteenth Amendments of the United States Constitution;

    c.  The HRC is void and unenforceable because it is an unconstitutionally vague criminal law in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

    d.  The HRC is void and unenforceable because it is an impermissible exercise of power under the Home Rule Charter and Optional Plans Law, 53 Pa. C.S. § 2901 *et seq.* and Article IX of the Pennsylvania Constitution.

    e.  The HRC is void and unenforceable because it is preempted by the Pennsylvania Oil and Gas Act, 58 Pa.C.S. § 2301 *et seq*.

    f.  The HRC is void and unenforceable because it is exclusionary.

    g.  The HRC is void and unenforceable because it is preempted by the Pennsylvania Limited Liability Company Law, 15 Pa.C.S. § 8901 *et seq*.

158. Any of the violations alleged in this Count must result in a declaration that the HRC is void and unenforceable in its entirety. The presence of a severability clause does not change this

outcome. Grant Township would not have enacted the HRC without each of the invalid provisions and the valid and invalid provisions of the HRC are so intertwined that it would be rendered meaningless if the offending provisions were severed.

## PRAYER FOR RELIEF

WHEREFORE, PGE respectfully requests the following relief:

159. A preliminary and permanent injunction prohibiting any action to enforce the HRC.

160. Entry of judgment declaring that the HRC is void and unenforceable in its entirety and specific declarations that:

    a. The HRC is void because it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

    b. The HRC is void because it violates the First and Fourteenth Amendments to the United States Constitution.

    c. The HRC is void because it violates procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution.

    d. The HRC is void because it violates substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution.

    e. The HRC is void because it is an unconstitutionally vague criminal law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

    f. The HRC is void and unenforceable because it is an impermissible exercise of power under the Home Rule Charter and Optional Plans Law, 53 Pa. C.S. § 2901 *et seq.* and Article IX of the Pennsylvania Constitution.

   g.   The HRC is void and unenforceable because it is preempted by the Pennsylvania

        Oil and Gas Act, 58 Pa.C.S. § 2301 *et seq.*

   h.   The HRC is void and unenforceable because it is exclusionary.

   i.   The HRC is void and unenforceable because it is preempted by the Pennsylvania

        Limited Liability Company Law, 15 Pa.C.S. § 8901 *et seq.*

161.   Awarding PGE all fees and costs incurred in this action, including all reasonable

attorneys' and expert fees pursuant to 42 U.S.C. § 1988; and

162.   Granting such other relief as this Court shall deem just and equitable under the

circumstances.

Respectfully submitted,


By: _/s/ Lisa C. McManus_____

Lisa C. McManus (PA 59661)
120 Market Street
Warren, PA 16365
Phone: 814.723.3230
Fax:  814.723.3502
lisamcmanus@penngeneralenergy.com

Kevin J. Garber, Esquire
Pa. I.D. #51189
James V. Corbelli, Esquire
Pa. I.D. #56671
Alana E. Fortna, Esquire
Pa. I.D. #309691

Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 6th Floor
Pittsburgh, PA  15222
412-394-5400

*Counsel for Plaintiff, Pennsylvania General*
*Energy Company, L.L.C.*