**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PENNSYLVANIA GENERAL ENERGY
COMPANY, L.L.C.,

*Plaintiff*,

v.

GRANT TOWNSHIP OF INDIANA COUNTY
AND THE GRANT TOWNSHIP BOARD OF
SUPERVISORS,

*Defendants*.

Civil Action No. 20-351 ERIE

District Judge Susan Paradise Baxter

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Plaintiff – a corporation and property – is suing a Home Rule municipality under 42 U.S.C. § 1983, which Congress passed after the Civil War to protect the rights of former enslaved persons, and to establish that people are not property. In this case, property is using § 1983 to sue people. Plaintiff is unhappy that the Pennsylvania Department of Environmental Protection ("DEP") rescinded its permit to inject fracking waste into a well in Grant Township, so Plaintiff has sued the Township to try to invalidate its democratically enacted Home Rule Charter ("Charter"), which bans such waste disposal. Plaintiff could have sued over the Charter at any time since 2015, but it did not. Rescinding the permit was DEP's decision and was not caused by the passage of the Charter; the Charter was in place at the time DEP issued the permit in 2017.

Plaintiff's claims should be dismissed under Rule 12(b)(6) because the Complaint does not plead sufficient facts to establish that the Defendants deprived Plaintiff of its federal

constitutional rights. Moreover, Plaintiff is not entitled to injunctive relief because it cannot show irreparable harm, having waited more than five years to bring its claims.

Defendants respectfully submit that even if the Court finds that Plaintiff has valid claims, it should dismiss the claims pursuant to the *Younger* abstention doctrine because resolution of the claims in federal court would interfere with an ongoing state proceeding.

## STATEMENT OF FACTS[1]

The Complaint seeks declaratory and injunctive relief and alleges 11 causes of action: (1) the Charter allegedly violates the Equal Protection Clause by treating corporations and governments seeking to dispose of fracking waste differently than similarly situated natural persons (Complaint, ¶¶ 71-72); (2) the Charter violates the First and Fourteenth Amendments because it allegedly purports to divest corporations of their constitutional right to petition the Government for a redress of grievances (*id.*, ¶¶ 79-82); (3) in enacting the Charter, Grant Township has allegedly denied PGE substantive due process under the Fifth and Fourteenth Amendments (*id.*, ¶¶ 85-87); (4) the Charter allegedly deprives Plaintiff of legal rights and interests protected by the Fifth and Fourteenth Amendments without providing due process of law (*id.*, ¶¶ 90-94); (5) the Charter is an "unconstitutionally vague criminal law" (*id.*, ¶¶ 96-106); (6) the Charter violates the Contracts Clause because it allegedly has prevented PGE from

---

[1] Generally, the four corners of the Complaint are the only basis for determining a motion to dismiss. In that regard, the "facts" are taken from Plaintiff's Complaint. Defendants do not concur with Plaintiff's rendition of the facts. In addition, as an exception to the general rule, a Court may also consider documents that are attached to or submitted with a Complaint and any matters incorporated by reference or integral to a claim, items subject to judicial notice, matters of public record, orders, and items appearing in the case record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n. 5 (3d Cir. 2006) (recognizing that courts may take judicial notice of prior judicial proceedings). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gills*, 372 F.3d 218, 223 (3d Cir. 2004).

realizing the benefits of the Injection Lease (*id.*, ¶¶ 110-114); (7) the Charter is an "impermissible exercise of Grant Township's powers as a home rule municipality" under the Pennsylvania Home Rule Charter and Optional Plans Law and under Article IX of the Pennsylvania Constitution (*id.*, ¶¶ 117-126); (8) the Charter is allegedly preempted by the Pennsylvania Oil and Gas Act, 58 Pa.C.S. § 2301 *et seq.* (*id.*, ¶¶ 128-136); (9) the Charter violates the "well settled principle of Pennsylvania land use law that a municipality must authorize all legitimate uses somewhere within its boundaries" (*id.*, ¶¶ 138-142); (10) the Charter is preempted by the Pennsylvania Limited Liability Company Law, 15 Pa.C.S. § 8901 *et seq.* (*id.*, ¶¶ 144-147); and (11) Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202.

**ARGUMENT**

I.    **THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO THE *YOUNGER* ABSTENTION DOCTRINE**

The Third Circuit has explained *Younger* abstention as follows: "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court could offend principles of comity by interfering with an ongoing state proceeding."[2]

*Younger* abstention has three prongs: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims.[3]

---

[2] *Addiction Specialists, Inc. v. Tp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger*, *supra*). Unlike *Pullman* abstention, in which the action is merely stayed, under *Younger* abstention the district court ordinarily dismisses the action. *Id.*; *see also Schall v. Joyce*, 885 F.2d 101, 113 (3d Cir. 1989).
[3] *Schall*, 885 F.2d at 106.

Here, the ongoing Commonwealth Court proceedings about Grant Township's Home Rule Charter implicate important state interests.[4] In the court's most recent Opinion, Senior Judge Leadbetter wrote: "We conclude that neither DEP's petition for review nor the Township's remaining counterclaims are moot because *more than the single permit at issue … remains in dispute here. DEP's case encompasses at least two larger issues*."[5] The remaining issues include "whether two state statutes [the Pennsylvania Oil and Gas Act and Solid Waste Management Act] preempt the Charter such that the Township cannot use the Charter to preclude the application of state laws pertaining to depositing waste from oil and gas extraction when they conflict with the Charter"; "the legality of the two state statutes upon which DEP bases its preemption claims"; and whether "the Charter is a valid law under [Article I Section 27 of the Pennsylvania Constitution - the Environmental Rights Amendment]."[6]

The state proceeding affords Plaintiff an adequate opportunity to raise its federal claims. The Commonwealth Court litigation has been ongoing since 2017 and has not yet gone to trial. Upon information and belief, Plaintiff will soon be moving to intervene in that proceeding, and if this Court dismisses the instant proceeding, Plaintiff is free to raise its claims in state court. Moreover, Plaintiff has already challenged the rescission of the permit before the Pennsylvania Environmental Hearing Board, whose decision it can appeal to the Commonwealth Court.[7]

---

[4] *See generally Pa. Dep't of Environmental Protection v. Grant Tp., et al*., No. 126 MD 2017 (Pa. Cmwlth. Ct.).
[5] *Id.* (Jan. 26, 2021 Memorandum Opinion) at 9 (emphasis added).
[6] *Id.* at 9-10.
[7] *Pennsylvania General Energy Company, LLC, v. Department of Environmental Protection*, EHB Docket No. 020-046-R.

## II.     THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff bears the burden of proof on the elements of a Section 1983 claim.[8] Plaintiff must prove by a preponderance of the evidence that: (1) Defendants acted under color of state law and (2) while acting under color of state law, Defendants deprived Plaintiff of a federal constitutional right.[9] As set forth in detail for each claim below, Plaintiff's Complaint does not plead sufficient facts to establish that the Defendants deprived Plaintiff of its federal constitutional rights.

### A.  Plaintiff fails to state a claim under the Equal Protection Clause (Count I).

"[I]n an equal protection challenge the question is whether 'the Township has irrationally distinguished between similarly situated classes.'"[10] A plaintiff that is not a part of a protected class such as gender or race may still have an equal protection claim under the "class of one" theory.[11] Under that doctrine, a plaintiff may obtain relief for equal protection violations so long as a plaintiff alleges that it has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[12] In the Third Circuit, a plaintiff asserting a "class of one" claim "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."[13]

---

[8] *See, e.g., Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

[9] *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also, e.g., Groman*, 47 F.3d at 633.

[10] *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 171 (3d Cir. 2006) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 689 (3d Cir. 1980)).

[11] *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

[12] *Id.*

[13] *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

## 1. Similarly situated

The first step in an equal protection analysis is to ascertain whether Plaintiff was treated differently than similarly situated entities.[14] Persons are similarly situated when "they are alike in all relevant aspects."[15] The Court thus must begin by examining whether Plaintiff is similarly situated to others who may be permitted to inject fracking waste in Grant Township.[16]

The Charter does not treat Plaintiff any differently than any other similarly situated entity, that is, an entity that plausibly would dispose of fracking waste within Grant Township. Corporations are the only entities with the necessary resources and immunities to engage in such activities, and they can avoid damages for spills and leaks by declaring bankruptcy.[17]

## 2. Legitimate government purpose

Next, if "the entities are similarly situated," then Grant Township "must justify its different treatment of the two," by demonstrating that the ordinance is rationally related to a legitimate government purpose.[18] "[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic" of government activity.[19]

In *SWEPI, LP v. Mora County*, the District of New Mexico considered an equal protection challenge to a local law banning oil and gas extraction and development activities, and

---

[14] *Cleburne,* 473 U.S. at 439; *Melrose, Inc. v. City of Pittsburgh,* 613 F.3d 380, 394 (3d Cir. 2010).

[15] *Startzell v. City of Philadelphia,* 533 F.3d 183, 203 (3d Cir. 2009) (internal quotations omitted).

[16] *See Congregation Kol Ami v. Abington Twp*., 309 F.3d 120, 137 (3d Cir. 2002) (the "first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone.").

[17] *See SWEPI, LP v. Mora County*, 81 F. Supp. 3d 1075, 1080 (D.N.M. 2015).

[18] *Cty. Concrete Corp*., 442 F.3d at 171 (citation omitted).

[19] *See Holt*, 20 F.Supp.2d at 825 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1990)); *see also FCC v. Beach Commns, Inc.*, 508 U.S. 307, 313 (1993) (holding that government actions will be found rational "if there is any reasonably conceivable state of facts" that could support them).

found a rational basis for the disparate treatment of corporations.[20] The court held that "[i]t is rational that, if corporations and not individuals engage in fracking, Mora County would ban corporations but not individuals from engaging in hydrocarbon exploration and extraction."[21]

Similarly, here, even if Plaintiff could maintain that they are similarly situated to others treated more favorably, their claim still fails because Defendants had a rational basis for banning them from disposing of fracking waste: namely, protecting the environment and water supply for the residents of Grant Township.[22] Indeed, Defendants have a public trustee duty to do so under Article I, Section 27 of the Pennsylvania Constitution.[23] Grant Township had a legitimate reason to pass the Charter, which banned corporations and government entities from depositing fracking waste within the Township. As articulated in the Bill of Rights, the Charter was passed to protect the community's and the environment's health and safety.[24] The people of Grant Township identified the corporate depositing of fracking waste as a serious threat to their community, including their water supplies.[25] The Charter affects only corporations, because corporations are the only entities that use fracking and other dangerous oil-and-gas extraction techniques, and not because of an invidious discrimination or bias. Communities have legitimate reasons to be concerned about corporate activities, coupled with inadequate federal and state oversight,

---

[20] *SWEPI, LP v. Mora County*, 81 F. Supp. 3d 1075, 1080 (D.N.M. 2015).

[21] *Id.* at 1176.

[22] *See Pioneer Aggregates*, *Inc.,* No. 3:11-00325.

[23] PA. CONST., Art. I, Section 27; *see also Robinson Township, Washington County v. Commonwealth,* 83 A.3d 901 (Pa. 2013).

[24] Through the Charter, the residents of Grant Township identified a multitude of reasons for their adoption of the Charter, including their "right to clean air, water, and soil"; "right to the scenic, historic, and aesthetic values of the Township, including unspoiled vistas and a rural quality of life"; and "right to a sustainable energy future." Compl., Exh. A at 1.

[25] *Id.*

causing environmental contamination and public health hazards.[26] Accordingly, Defendants'

actions were rationally related to the legitimate state interest.

For the reasons stated above, the Court should dismiss Count I of Plaintiff's Complaint.

**B. Plaintiff fails to state a claim under the Petition Clause (Count II).**

For an "access to court" claim brought under the Petition Clause, Plaintiff must establish

actual harm or prejudice resulting from the alleged deprivation of rights.[27] The Petition Clause

affords Plaintiff the right to seek redress of any grievances it may have over the Charter. Indeed,

Plaintiff exercised that right by filing this lawsuit. However, Plaintiff cannot maintain a Petition

Clause claim in this lawsuit for grievances first complained of in this federal lawsuit, as *Plaintiff*

*has yet to be denied redress of such grievances*.[28]

---

[26] While recognizing that the Court came to a different conclusion in *Pennsylvania General Energy Co., L.L.C., v. Grant Tp.*, No. 14-cv-209-SPB (W.D.Pa.) [hereinafter "*PGE I*"], ECF No. 271 (March 31, 2017 Memorandum Opinion) at 20-25, Defendants respectfully submit that the question is not whether the parties are similarly situated with respect to the enjoyment of constitutional rights. If that were the test, no Equal Protection claim would ever fail because every litigant in an EP challenge has rights. The questions are (1) whether the Township has irrationally distinguished between similarly situated parties, and (2) whether the parties similarly situated with respect to the object of the Charter. Here, Defendants did not single out Plaintiff for disparate treatment. The Charter applies to any entity that seeks to dispose of fracking waste in the Township. Second, even if PGE was similarly situated to an individual, Grant Township rationally concluded that it was a near-certainty that only corporations and governmental entities would potentially engage in the depositing of fracking waste.

[27] *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances") (citations omitted) and *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (claim for denial of court access requires evidence of actual injury in the form of a consequential infringement of the protected right) (citation omitted), *cert. denied*, 549 U.S. 1286 (2007).

[28] *See Mitchell v. Flaherty*, No. 2:11-cv-610 (W.D.Pa. January 30, 2012); *see also Western Pa. Restaurant Ass'n v. City of Pittsburgh*, 77 A.2d 616, 620 (Pa. 1951) ("The fact that the ordinance does not provide for a right of appeal to the courts from the refusal of the licensor to grant a permit is immaterial in view of the fact that such right must be held to exist even in the absence of an express grant thereof").

In *PGE I*, the Court held that Grant Township's Ordinance violated the Petition Clause because it "limit[ed] access to courts only through approved 'community meetings.'"[29] Here, the Charter contains no similar provision.[30]

In *Seneca*, this Court held that Highland Township's Home Rule Charter violated the Petition Clause by "*attempt*[ing] to eliminate the ability of corporations to access the courts, which it cannot constitutionally do."[31] The Court in *PGE I* also noted that "While the Ordinance did not actually prevent PGE from filing the instant action, the Ordinance *attempted* to do so. It is that *attempt* that runs afoul of the Constitution."[32] Defendants respectfully submit that the Court should find differently in the instant case. From the face of the Complaint, it is apparent that Plaintiff was able to access the courts. An *attempted* constitutional violation is not cognizable under Section 1983, only a claim of *actual* deprivation.[33]

For the reasons stated above, the Court should dismiss Count II of Plaintiff's Complaint.

**C**. **Plaintiff fails to state a claim under the Substantive Due Process Clause (Count III).**

Count III contends that the Charter violated the Substantive Due Process Clause. The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law."[34] "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act

---

[29] *PGE I* (note 26, *supra*), ECF No. 271 (March 31, 2017 Memorandum Opinion) at 27.
[30] *See generally* Compl., Exh. A.
[31] *Seneca Resources Corp. v. Highland Tp.*, No. 16-cv-289 (W.D.Pa. Sept. 29, 2017) (emphasis added).
[32] *PGE I* (note 26, *supra*), ECF No. 271 (March 31, 2017 Memorandum Opinion) at 26-27 (emphasis added).
[33] *See Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir.), *cert. denied*, 469 U.S. 1038 (1984); *Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F.Supp.2d 803, 834 (E.D. Pa. 1998); *Ashford v. Skiles*, 837 F.Supp. 108, 115 (E.D.Pa.1993); *Defeo v. Sill*, 810 F.Supp. 648, 658 (E.D.Pa.1993).
[34] U.S. CONST. AMEND. 14 § 1.

deprived them of a protected property interest."[35] A successful facial substantive due process challenge to the Charter must "allege facts that would support a finding of arbitrary or irrational legislative action by the Township."[36]

The Third Circuit has held that the "fabric of substantive due process, as woven by our courts, encompasses at least two very different threads."[37] The first thread of substantive due process applies to legislative acts.[38] A legislative act that limits a fundamental right will survive a substantive due process challenge only if it is necessary to promote a compelling governmental interest.[39] When a fundamental right is not at stake, a law must be rationally related to a legitimate government interest in order to survive a substantive due process challenge.[40]

The second thread of substantive due process jurisprudence analyzes "non-legislative," or executive, government actions.[41] When a plaintiff challenges a non-legislative state action, the Court must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.[42]

---

[35] *Cty. Concrete Corp.*, 442 F.3d at 165 (citation omitted).

[36] *Id.* at 169 (citation omitted).

[37] *Nicholas*, 227 F.3d at 139.

[38] *Koorn v. Lacey Twp.,* 78 F.Appx. 199, 202 (3d Cir. 2003). A legislative act is, "generally[, ] laws and broad executive regulations" which "apply to large segments of society" - as distinguished from a non-legislative, or executive act, which "typically applies to one person or to a limited number of persons." *Nicholas,* 227 F.3d at 139 n. 1.

[39] *Nicholas,* 227 F.3d at 139.

[40] *Koorn,* 28 F.Appx. at 202.

[41] *Id.*

[42] *Nicholas,* 227 F.3d at 142.

Here, Plaintiff appears to have lost the thread. It alleges that "Grant Township's conduct … is deliberate, arbitrary, and irrational, exceeds the limits of governmental authority, amounts to an abuse of official power, and shocks the conscience."[43] The shocks-the-conscience standard is not the correct standard for PGE's substantive due process claim. As noted above, that standard applies to executive, not legislative, actions. Because the Charter is a legislative enactment, the arbitrariness of Defendants' enactment of the Charter should be judged under a rational basis or strict scrutiny standard, depending on the nature of the interests involved. A legislative act that limits a fundamental right will survive a substantive due process challenge only if it is necessary to promote a compelling governmental interest.[44] When a fundamental right is not at stake, a law must be rationally related to a legitimate government interest in order to survive a substantive due process challenge.[45] Moreover, Plaintiff cannot state a substantive due process claim because there is no protected property interest at issue.

### 1. Plaintiff's Substantive Due Process claims do not implicate a fundamental right.

Plaintiff does not even *assert* that the Charter implicates a fundamental right, and there is no protected property interest at issue. This claim should be dismissed on that basis alone. In any case, because its property rights are not fundamental rights, a rational basis analysis is the correct standard. Courts have routinely held that property interests and rights do not rise to the level of fundamental rights requiring a strict scrutiny analysis. Property rights, and economic interests in general, have not been treated as fundamental rights, at least since the demise of *Lochner*.[46]

---

[43] Compl. ¶¶ 86-87, at 15.

[44] *Nicholas,* 227 F.3d at 139.

[45] *Koorn,* 28 F.Appx. at 202.

[46] *See*, *e.g., John E. Long, Inc. v. Borough of Ringwood,* 61 F.Supp.2d 273, 285 (D.N.J. 1998) (Chesler, M.J) (noting that "a person does not have a fundamental right to use . . . property or have it zoned in any way he or she wishes"); *Polselli v. Nationwide Mut. Fire Ins. Co., No. CIV*

Here, Plaintiff does not claim that the Charter has impermissibly deprived it of any fundamental right protected as a matter of substantive due process, because no specific fundamental property interest has actually been deprived.[47]

### 2.   Defendants have a legitimate government interest.

The Defendants have a legitimate government interest in enacting the Charter. It is rational that the Defendants would ban corporations, but not individuals, from engaging in the disposal of fracking waste. Such a distinction is not arbitrary. Only corporations have the resources to engage in fracking, and have the immunities to avoid liability from spills and leaks by declaring bankruptcy. It is rational that, if corporations and not individuals engage in fracking, Grant Township would ban corporations but not individuals from engaging in frack waste disposal.

It is therefore not unreasonable for Grant Township to apply the Charter's prohibitions to corporations but not to individuals. As District Judge James O. Browning noted, "engaging in any expensive business venture, without limited liability protections, would subject a person's entire wealth to liability if something went wrong. Using an incorporated entity, however, allows a person to risk only a definite amount of money – that which he or she invested into the entity –

---

*A* 91-1364, 1993 WL 137476, at *8 (E.D. Pa. Apr. 30, 1993) (Yohn, J.) ("However, a property right is not considered one of the fundamental rights entitled to strict scrutiny analysis."); *Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133 (3d Cir. 2000); *see generally Albright v. Oliver,* 510 U.S. 266, 271-72 (1994). *See Piecknick*, 36 F.3d at 1261-62 (there is a Fourteenth Amendment liberty to pursue a calling or occupation, but not the right to engage in a specific business operation, i.e., an exclusive towing contract in a particular area); *Phantom of E.Pennsylvania v. New Jersey State Police*, Civ. A. No. 07-2748, 2008 U.S. Dist. LEXIS 38624 at *7 (E.D. Pa. May 13, 2008) (Plaintiff must allege more to show a constitutional injury than that it has lost unspecified business where it still has the ability to carry out its fundamental business operation).

[47] *See Pioneer Aggregates, Inc. v. Pa. DEP*, No. 3:11-00325 (M.D.Pa., September 21, 2012).

without risking the rest of his or her wealth. *It is thus reasonable to assume that only incorporated entities, and not individuals, engage in hydrocarbon exploration and extraction.*"[48]

For the reasons stated above, the Court should dismiss Count III of Plaintiff's Complaint.

**D. Plaintiff fails to state a claim under the Procedural Due Process Clause (Count IV).**

Plaintiff alleges that the Charter's prohibition of fracking waste disposal "deprives PGE of legal rights and interests protected by the Fifth and Fourteenth Amendments of the United States Constitution without providing due process of law." Compl. ¶ 94.

Plaintiff's claim is without merit and should be dismissed for several reasons. First, in enacting the Charter, Defendants were acting in a legislative capacity.[49] In *Rogin*, the Third Circuit held that the amendments "constitute[d] general statements of Township policy rather than specific applications of policy to a particular landowner, and therefore can be characterized only as legislative acts. … *Long ago, the Supreme Court decided that the protections of procedural due process do not extend to legislative actions.*"[50] The Third Circuit noted that general legislation of course can have a differential impact on certain groups of landowners.[51]

---

[48] *SWEPI, LP v. Mora County*, 81 F. Supp. 3d 1075, 1176 (D.N.M. 2015).

[49] *See Rogin v. Bensalem Tp.*, 616 F.2d 680, 693 (3d Cir. 1980) (due process claim against the Bensalem Board of Supervisors was without merit because, in passing zoning amendments, the Board was acting in a legislative capacity).

[50] *Id.* (citing *Bi-Metallic Investment Co. v. State Board of Equalization of Colorado*, 239 U.S. 441, 445 (1915) (rejecting a landowner's assertion that he had a due process right to a hearing before the State Board of Equalization voted on an order increasing by forty percent the valuation for tax purposes of all property in Denver) (emphasis added).

[51] *Rogin*, 616 F.2d at 693 ("For example, an ordinance limiting the height of buildings will affect a landowner who is planning to build or is constructing a fifty story building differently than it will his neighbor who owns a renovated, three-story colonial townhouse. … The act of legislating necessarily entails political trading, compromise, and ad hoc decisionmaking which, in the aggregate, produce policies that at least approximate a fair and equitable distribution of social resources and obligations.").

Similarly, here, Plaintiff may be more severely burdened by the Charter than are other oil and gas companies who are not attempting to inject fracking waste within Grant Township. That differential impact does not, however, change the character of the legislative act; nor does it entitle Plaintiff, in its quest to nullify the legislation, to the protections of procedural due process.[52]

Second, in order to trigger the protections of the procedural aspects of the Due Process Clause, a plaintiff must demonstrate a property or liberty interest.[53] For purposes of procedural due process, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules … that secure certain benefits and that support claims of entitlement to those benefits."[54] Under Pennsylvania law, permits generally are not recognized as property interests and instead are classified as mere privileges.[55]

Yet, here, Plaintiff alleges that it has "property interests" in its Injection Lease and UIC Permit (Compl. ¶ 90) and DEP Permit II (id. ¶ 91). This Court has previously determined that the same UIC permit did not demonstrate a property interest.[56] Plaintiff's claim that it was deprived

---

[52] See id., n.60.

[53] Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). See also Mathews v. Eldridge, 425 U.S. 319 (1976); Mudric v. Attorney Gen, of U.S., 469 F.3d 94, 98 (3d Cir. 2006) ("It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie.").

[54] Id. at 577.

[55] See Tri-State Transfer Co., Inc. v. Department of Environmental Protection Tinicum Tp., 722 A.2d 1129, 1133 n.3 (Pa.Commw. 1999); Crooks v. Pa. Securities Commission, 706 A.2d 360, 362 (Pa.Commw. 1998); accord MFS Inc., 2011 U.S.Dist. LEXIS 15440, at *144-145 n.50.

[56] Pennsylvania Gen. Energy Co., LLC v. Grant Twp., 2017 WL 1215444, at *18 (W.D. Pa. Mar. 31, 2017) ("The UIC permit is issued by the U.S. Environmental Protection Agency and serves as an 'Authorization to Operate Class II-D Injection Wells' in compliance with the provisions of the Safe Drinking Water Act and its corresponding regulations. ECF No. 170-2. The federal regulations indicate that neither the permit itself or the issuance of the permit 'convey any property rights of any sort, or any exclusive privilege.' 40 C.F.R. § 144.51(g); 40 C.F.R. §

of its property interest in the DEP Permit II fails for the same reason. Because the relevant permits are not classified as property interests under either federal or state law, Plaintiff has failed to show that it has a legitimate claim of entitlement to the permits as a property right or interest for procedural due process purposes.[57] As for the injection lease, lost profits and breach of a lease are not enough to establish a constitutional due process claim.[58]

For the reasons stated above, the Court should dismiss Count IV of Plaintiff's Complaint.

**E. Plaintiff fails to state a claim that the Charter is unconstitutionally vague (Count V).**

Plaintiffs allege that Section 110 renders the entire Charter an unconstitutionally vague criminal law because of the sentence: "All rights secured by this Charter are inherent, fundamental, and unalienable, and shall be self-executing and enforceable against both private and public actors." Compl. ¶ 98. This is a disingenuous claim, because Plaintiff leaves out the last sentence of Section 110: "The rights secured by this Charter shall only be enforceable against *actions specifically prohibited by this Charter*, unless otherwise specifically noted." Compl., Exhibit A at Section 110 (emphasis added).

Because the Charter clearly specifies what actions are prohibited, it is not unconstitutionally vague. For the reasons stated above, the Court should dismiss Count V of Plaintiff's Complaint.

---

144.35(b). PGE points to nothing in the permit itself or the law regulating such permits that automatically creates a legitimate claim of entitlement sufficient to demonstrate a property interest. The face of the permit itself spells out that it 'does not convey property rights or mineral rights of any sort or any exclusive privilege.' ECF No. 170-2. Because PGE has not satisfied its burden to prove the required property interest, the motion for summary judgment will be denied."). *See also Seneca Resources Corp. v. Highland Tp.*, No. 16-cv-289 (W.D.Pa. Sept. 29, 2017) at fn. 8.

[57] *See Perano v. Arbaugh*, No. 10-cv-01623 (E.D.Pa., March 24, 2011).

[58] *Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F.Supp.2d 803, 830 (E.D. Pa. 1998).

**F. Plaintiff fails to state a claim under the Contracts Clause (Count VI).**

At Count VI, Plaintiff alleges that the Charter violates the Contract Clause, based upon Plaintiff's being unable to "realize the benefits" of the Yanity well lease.

Article I, section 10 of the United States Constitution provides, in relevant part: "No State shall pass any ... Law impairing the Obligation of Contracts."[59] "The purpose of the Contract Clause is to protect the legitimate expectations that arise from ... contractual relationships from unreasonable legislative interference."[60] Accordingly, "[i]n order to come within the provision of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired but it must have been impaired by a law of the State."[61]

To prove a violation of the Contract Clause, a plaintiff must demonstrate that a "change in state law has 'operated as a substantial impairment of a contractual relationship.'"[62] The court must first engage in three threshold inquiries to establish a violation: "(1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial."[63]

This claim should be dismissed because, apart from its conclusory statements, Plaintiff has not identified the precise contractual right that has been impaired.[64] Plaintiff claims the

---

[59] U.S. CONST. ART. I, § 10.
[60] *Transport Workers Union of America, Local 290 By and Through Fabio v. Southeastern Pa. Transp. Auth.,* 145 F.3d 619, 622 (3d Cir. 1998).
[61] *New Orleans Waterworks Co. v. La. Sugar Ref. Co.*, 125 U.S. 18, 30 (1888).
[62] *Transport Workers Union.,* 145 F.3d at 621, *quoting Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244 (1978).
[63] *Id.*
[64] *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987) ("In assessing the validity of petitioners' Contract Clause claim in this case, we begin by identifying the precise contractual right that has been impaired and the nature of the statutory impairment.").

Charter is simultaneously hurting it by keeping it from disposing of fracking waste *and* by keeping it from being able to sell the well. It does not provide sufficient specificity about what these injuries entail. If the injury is being unable to reap the benefits of the contract, Plaintiff merely says that it has already spent $145,869.20 pursuant to the Injection Lease and "continues to incur costs" without being able to "reap the benefits of its contract." (Compl. ¶111). These costs are undefined in this claim, but likely refers to the annual rental payments of $14,000. *Id.* ¶ 20.

This shows no injury – in fact, it illustrates that Plaintiff is *saving money* by not paying to inject waste. Plaintiff states it must pay a royalty of $0.10 per barrel on injection waste. *Id.* If it is not injecting anything, it is saving that money. Moreover, the Injection Lease is in force as long as Plaintiff keeps making payments to the Lessors. *Id.* ¶ 22. The Charter is not forcing Plaintiff to keep making payments. That is fully within Plaintiff's control.

Plaintiff's other claimed impairment is that it "has attempted to sell the Yanity Well for disposal of produced fluids from gas development operations but has been unable to do so based on the existence of the HRC." *Id.* ¶ 62, 112. Plaintiff's failure to sell the well cannot implicate the Contracts Clause, since there is no contract at issue.

For the reasons stated above, the Court should dismiss Count VI of Plaintiff's Complaint.

## G. Plaintiff fails to state a claim under the HRC Law and the Pennsylvania Constitution (Count VII).

Pennsylvania courts apply the following five-part test to determine whether an ordinance has been preempted:

(1)  Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted?
(2)  Was the state law intended expressly or impliedly to be exclusive in the field?
(3)  Does the subject matter reflect a need for uniformity?

(4)  Is the state scheme so pervasive or comprehensive that it precludes co-existence of municipal regulation?
(5)  Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?[65]

The preemption analysis with respect to a home rule municipality, such as Grant Township, is somewhat modified. In *Nutter*, the Pennsylvania Supreme Court explained that a home rule municipality's exercise of authority should not be lightly intruded upon.[66] Accordingly, ambiguities about the scope of the municipality's authority should be resolved in the municipality's favor.[67]

Plaintiff alleges no injury under the HRC Law, and the Court cannot issue an advisory opinion in the absence of a case or controversy. For the reasons stated above, the Court should dismiss Count VII of Plaintiff's Complaint.

## H. Plaintiff fails to state a claim for preemption under the Pennsylvania Oil and Gas Act (Count VIII).

Plaintiff claims that the Charter is preempted by the Pennsylvania Oil and Gas Act. Plaintiff alleges that by the statute's terms, 58 Pa.C.S. § 3302 of the Oil and Gas Act expressly "supersedes" all local ordinances "purporting to regulate oil and gas operations" related to development unless those ordinances are adopted pursuant to the Flood Plain Management Act or the Municipalities Planning Code. However, as this Court held in *PGE I*, this preemption analysis need not be undertaken, because the statute to which Plaintiff directly links its preemption challenge (58 Pa.C.S. § 3302) was held to be unconstitutional by the Pennsylvania Commonwealth Court in *Robinson Township v. Commonwealth,* 96 A.3d 1104 (Pa. Cmmw. Ct. 2014) after the Pennsylvania Supreme Court held 58 Pa.C.S. § § 3303 and 3304

---

[65] *Liverpool Township v. Stephens*, 900 A.2d 1030, 1033 (Pa.Cmwlth.2006).
[66] *Nutter v. Dougherty*, 938 A.2d 401, 411 (Pa. 2007).
[67] *Id.* at 414.

unconstitutional in *Robinson Township, Washington County v. Commonwealth,* 83 A.3d 901 (Pa.

2013).[68] Accordingly, this statutory provision of Pennsylvania's Oil and Gas Act cannot preempt

the Charter.[69]

This Court reinforced its conclusion in its September 30, 2016 Memorandum Opinion in

*PGE I*:

> No preemption analysis was necessary because 55 Pa. C. S. § 3302, a provision of Pennsylvania's Oil & Gas Act, was "held to be unconstitutional by the Pennsylvania Commonwealth Court in *Robinson Township v. Commonwealth,* 96 A.2d 1104 (Pa. Cmmw. Ct. 2014) … . This conclusion was not an error. In pertinent part, 58 Pa. C. S. § 3302 provides that "[n]o local ordinance adopted pursuant to the MPC or the Flood Plain Management Act shall contain provisions which impose conditions, requirements, or limitations on the same features of oil and gas operations regulated by Chapter 32 or that accomplish the same purposes as set forth in Chapter 32. The Commonwealth, by this section, preempts and supersedes the regulation of oil and gas operations as provided in this chapter." *Id.*
>
> Because the challenged Ordinance was not enacted pursuant to the MPC or the Flood Plain Management Act, it is only the last sentence of §3302 that is relevant herein. And, it is that last sentence that the Commonwealth Court found unconstitutional after the Pennsylvania Supreme Court struck down §§3303 and 3304, thereby specifically enjoining the application and enforcement of § 3302 insofar as that section related to those provisions. As the Commonwealth Court specifically noted, ". . . *a more accurate description is that the final sentence of 58 Pa. C. S. § 3302 is necessarily declared unconstitutional. . .*" 96 A.3d at 1120 (emphasis added). Moreover, this week the Pennsylvania Supreme Court issued an opinion on the appeal of that Commonwealth Court decision in which the majority eviscerated much of the remaining Oil and Gas Act and opining that the Commonwealth Court had previously struck down the last sentence of §3302. *See Robinson Township v. Commonwealth of Pennsylvania,* ___ A.3d. ___, ___, Slip opinion at page 45 (September 28, 2016) ("Our Court's [previous] striking of §3215(b) and (d) and §3303 and §3304, as well as the Commonwealth Court's striking of the last sentence of §3302...."). The Supreme Court opinion specifically notes that the parties did not appeal the Commonwealth Court's action on §3302.[70]

For the reasons stated above, the Court should dismiss Count VIII of Plaintiff's Complaint.

---

[68] *See PGE I* (note 26, *supra*), ECF No. 113 (October 14, 2015 Memorandum Opinion) at 12-13.
[69] *Id.*
[70] *Id.*, ECF No. 222 (September 30, 2016 Memorandum Opinion) at 3-4.

I.     **Plaintiff fails to state a claim that the Charter is exclusionary (Count IX).**

As the Court noted in *PGE I*, upon a showing that an ordinance is *de jure* exclusionary, the burden shifts to the municipality to show that the "exclusionary regulation bears a substantial relationship to the public health, safety, morality, or welfare."[71] There, the Court found that the Ordinance was *de jure* exclusionary because it completely banned a "legitimate use," and granted judgment in favor of Plaintiff "[a]s Defendant has not opposed Plaintiff's motion in this regard." *Id.* at *16. Here, in contrast to both *Seneca* and *PGE I,* Defendant submits that it is apparent on the face of the Complaint that the Charter's prohibition on fracking waste disposal bears a substantial relationship to public health, safety, and welfare.[72]

For the reasons stated above, the Court should dismiss Count IX of Plaintiff's Complaint.

**J. Plaintiff fails to state a claim for preemption under the Pennsylvania LLC Law (Count X).**

Plaintiff fails to state a claim for preemption. Plaintiff alleges that the Charter is preempted by the Pennsylvania Limited Liability Company ("LLC") Law, 15 Pa.C.S. § 8901 *et seq*. because it purports to strip corporations including limited liability companies of their status as natural persons (Compl., ¶¶ 144-147). However, Plaintiff has suffered no injury under this law because the section they are citing, 15 Pa.C.S. § 8921, was repealed November 21, 2016.[73] Moreover, before that section was repealed, District Judge Ambrose noted that the LLC Law was, "in large part, [a] statute[] of creation, not preemption."[74]

---

[71] *Id.*, ECF No. 114 at 16, citing *Twp. of Exeter v. Zoning Hearing Bd.*, 962 A.2d 653, 661 (Pa. 2009).
[72] *See* Compl., Exh. A at 1 (Charter passed in furtherance of residents' "right to clean air, water, and soil").
[73] P.L.1328, No.170.
[74] *Penn Ridge Coal, LLC v. Blaine Tp.,* No. 08-1452 (W.D.Pa. September 16, 2009).

Again, "a mere allegation that a plaintiff is 'affected' by governmental action does not amount to an allegation of injury in fact."[75] The LLCL addresses only creation and internal corporate governance, and expressly *does not* preempt other laws regulating corporate activities. To the extent Plaintiff claims that the repealed Section 8921 preempts the Charter, it bears noting that the Charter does not declare that corporations are not constitutional persons, but that if corporations seek to violate the Charter or other laws of Grant Township, they lose their legal protections.

For the reasons stated above, the Court should dismiss Count X of Plaintiff's Complaint.

## K. COUNT XI - DECLARATORY JUDGMENT

At Count XI, Plaintiff claims "Declaratory judgment is necessary here because PGE has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to its rights." Compl. at ¶ 155. This is not so. As laid out further below, Plaintiff has not shown that the Charter is causing it irreparable harm. If the harm complained of is the rescission of the DEP Permit II, Plaintiff has *already* brought an administrative appeal against DEP at the Environmental Hearing Board.[76] That proceeding was ongoing until Plaintiff, jointly with DEP, requested to stay it because it had filed the Complaint in the instant case.[77] Plaintiff cannot now turn around and declare it lacks an adequate administrative or legal remedy with respect to the rescission of the permit.

---

[75] *Fednav, Ltd.*, 547 F.3d at 618.
[76] *Pennsylvania General Energy Company, LLC, v. Department of Environmental Protection*, EHB Docket No. 020-046-R.
[77] *Id.*

Moreover, if the relief Plaintiff seeks is the invalidation of the Charter, as noted above, Plaintiff is imminently seeking to intervene in the ongoing Commonwealth Court proceeding in which the validity of the Charter is at issue.

For the reasons stated above, the Court should dismiss Count XI of Plaintiff's Complaint.

## L. Plaintiff is not entitled to injunctive relief.

In its Prayer for Relief, Plaintiff requests a preliminary and permanent injunction prohibiting any action to enforce the Charter. In determining whether a preliminary injunction should be issued, a court considers the following factors: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.[78]

### 1. Plaintiff is not entitled to a preliminary injunction.

Even if Plaintiff did have valid claims to seek injunctive relief, it still would not be entitled to a preliminary injunction. Plaintiff has not demonstrated the basic prerequisites for a preliminary injunction – that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest.[79]

Plaintiff cannot demonstrate the irreparable harm required for a preliminary injunction. Parties seeking equitable relief from a federal court have a duty to seek equitable relief in a timely fashion. In the context of preliminary injunction applications, delay in seeking the

---

[78] *See, e.g., Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009).
[79] *Winter*, 129 S. Ct. at 374.

extraordinary remedy of a preliminary injunction is an important factor bearing on the actual

need for injunctive relief.[80]

Plaintiff's *five-year* delay in seeking a preliminary injunction belies any assertion that it

will be irreparably harmed unless the Court enjoins enforcement of the Charter. Indeed, federal

courts across the country have denied preliminary injunctions where the movants waited *just a*

*few months* to seek such relief.[81] With respect to delay, the relevant period of delay begins when

the plaintiff learned of the alleged violation.[82] If a party unduly delays seeking injunctive relief,

then logically, that party "demonstrates that there is no apparent urgency to the request for

---

[80] *Wireless Agents, LLC v. T-Mobile USA, Inc.*, Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590, 2006 WL 1540687, at \*13 (N.D. Tex. June 6, 2006) (citing *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)); *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438 (S.D. Tex. 2008) (denying injunctive relief after an alleged breach of a non-compete where movant unreasonably delayed to file suit, then requested multiple continuances to the injunction hearing).

[81] *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 826 (5th Cir. 1976) (Drug Enforcement Agency's seven-month delay in seizing controlled substances from pharmacy was inconsistent with its assertion that imminent danger to the public health and safety required seizure without notice, so that the public interest element of preliminary injunction analysis did not favor such seizure); *Badillo, et al. v. Playboy Entm't Group, Inc., et al*., 2004 U.S. Dist. LEXIS 8236, \*7 (M.D. Fla. 2004) (denying motion for preliminary injunction in that irreparable harm not established where movant waited over nine months before moving to enjoin); *Chase Manhattan Corp. v. N.W. Mut. Life*, 1993 U.S. Dist. LEXIS 2271 (S.D.N.Y. 1993) (citing *Lanvin Inc. v. Colonia, Inc.*, 739 F.Supp. 182, 192 (S.D.N.Y. 1990)) ("Thus, a delay in seeking preliminary injunctive relief, even if not amounting to laches barring such relief, demonstrates that speedy action to protect the erosion of movant's rights is not needed and thus that movant is not entitled to a preliminary injunction in the first place. Parties cannot seek relief for the erosion of their rights if such erosion arose because they sat on those rights") (citations omitted); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2nd Cir. 1985); *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602, 609, 205 U.S.P.Q. (BNA) 1055, 1062 (S.D.N.Y. 1979) (one-year delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc*., 49 F.3d 1551, 1557 (2nd Cir. 1995) (17 month delay meant no irreparable harm); *Fisher Price, Inc. v. Well Made Toy Mfg.*, 25 F.3d 119, 124, 125 n.1 (2d Cir. 1994) (indicating that three-month delay is unreasonable in seeking injunctive relief).

[82] *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc*., No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358, 2016 WL 4367990, at \*3 (S.D.N.Y. Aug. 12, 2016).

injunctive relief."[83] Delay, or too much of it, indicates that a suit or request for injunctive relief is more about *gaining an advantage* (either a commercial or litigation advantage) than protecting a party from irreparable harm.[84] Delay alone has been held to be evidence of a lack of the irreparable harm needed to obtain a preliminary injunction. Thus, the fact of delay may serve to bar relief on the ground that such delay indicates the absence of irreparable harm.[85] Such is the case here.

**2. Plaintiff is not entitled to a permanent injunction.**

Nor can Plaintiff meet the standard for a permanent injunction. The analysis is identical to that for a preliminary injunction, except in place of the requirement for Plaintiff to show imminent risk of irreparable harm, it is whether Plaintiff has shown irreparable harm. Here, it has not.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss should be granted and Plaintiff's Claims for Relief should be dismissed.

Dated: February 16, 2021                    Respectfully submitted,

                                            */s/Karen L. Hoffmann*
                                            Karen L. Hoffmann
                                            SYRENA LAW
                                            128 Chestnut Street
                                            Suite 301A
                                            Philadelphia, PA 19106
                                            412-916-4509
                                            karen@syrenalaw.com
                                            *Attorney for Defendants*

---

[83] *Wireless Agents* at *15; *High Tech Med. Instrumentation*, 49 F.3d at 1557.
[84] *Pippin et al. v. Playboy Entm't Group, Inc. et al*., 2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003).
[85] *Chase Manhattan Corp. v. N.W. Mut. Life,* 1993 U.S. Dist. LEXIS 2271 (S.D.N.Y. 1993) (denying injunctive relief where movant waited six months to file suit and one year to seek injunctive relief after discovering alleged misappropriation).